## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No.  19-CR-364-G** |
| | ) | |
| **ROLANDO CIFUENTES-LOPEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPLY IN SUPPORT OF MOTION FOR RESTITUTION

The United States respectfully submits this Reply in Support of the United States' Motion for Restitution (Doc. 38).  Dr. David C. Missar evaluated Jane Does 1 and 2 and calculated a reasonable estimate of their losses caused by Mr. Cifuentes-Lopez's conduct in the categories provided by 18 U.S.C. § 2259(b)(3), meeting the preponderance standard for restitution.  Dr. Missar's calculation is reliable and credible:  the D.C. Circuit affirmed a restitution award based on Dr. Missar's opinion regarding the harms to four adolescent victims who were sexually trafficked in *In re Sealed Case*, 702 F.3d 59 (D.C. Cir. 2012). This Court should order restitution consistent with Dr. Missar's calculation of losses for Does 1 and 2.

## ARGUMENT

Mr. Cifuentes-Lopez does not dispute the calculations Dr. Missar made of the losses to the two child victims here.  Rather, he makes essentially one argument regarding restitution: that he should be held responsible for a smaller share of the restitution than Natalie Halbert and Wilson Gramajo-Maldonado.  (Doc. 40 at 4-7.)  The facts here, and

governing law, support a joint and several award of restitution for both victims for the amounts calculated by Dr. Missar.

*First*, the Court should consider evidence regarding Mr. Cifuentes-Lopez's role in the offense.  Mr. Cifuentes-Lopez pleaded guilty to the Indictment, which charged him with engaging in child sex trafficking of both Jane Doe 1 and Jane Doe 2 and aiding and abetting such child sex trafficking. (Doc. 13.)  Mr. Cifuentes-Lopez argues that he did not function on the supply side of the trafficking of child victims Jane Doe 1 and Jane Doe 2. (*Id.* at 4-5.)  However, the investigation has revealed credible evidence that he functioned on both the supply and demand sides of this business.

Mr. Cifuentes-Lopez was Halbert's landlord.  According to Halbert, when she fell behind on rent, Mr. Cifuentes-Lopez offered to discount her rent in exchange for sex.  They did not reach an agreement on the amount of discount, and Halbert never caught up on rent, according to Mr. Cifuentes-Lopez.  After some time, Mr. Cifuentes-Lopez started sending other men to Halbert's trailer, demanding that Halbert provide sex to them too, for a discount in rent and to avoid eviction.  Some of the men asked for sex with Jane Doe 1 and Jane Doe 2 instead of Halbert, and they engaged in sex with those children.  The men sent by Mr. Cifuentes-Lopez did not pay on their first visit, because it was supposedly a commercial sex transaction for rent discounts with Mr. Cifuentes-Lopez.  However, many became repeat customers, including of Jane Does 1 and 2.  Mr. Cifuentes-Lopez also paid for himself to have sex with Jane Doe 1 and Jane Doe 2.

Dr. Missar recounts these facts in his reports, based on his review of reports about interviews of Natalie Halbert and what Jane Doe 1 told him in his interview of her.  (*See*

Doc. 39 Ex. 2 at 3-4.)  Dr. Missar will be available to testify at a restitution hearing. Further, the United States intends to offer evidence at sentencing of these facts, supporting the conclusion that Mr. Cifuentes-Lopez was part of both the supply side of this child sex trafficking and the demand side of this child sex trafficking.

In addition to patronizing, soliciting, and obtaining a child, child sex trafficking includes recruiting, enticing, harboring, providing, and maintaining a child by any means, knowing and in reckless disregard that the child would be caused to engage in a commercial sex act.  Mr. Cifuentes-Lopez owned the trailer where the vast majority of the commercial sex transactions with Jane Doe 1 and Jane Doe 2 occurred.  Even assuming arguendo that he did not send other men to the trailer for sex, he harbored and maintained the children there, knowing that commercial sex acts were occurring with the children, including with himself.

***Second,*** Mr. Cifuentes-Lopez argues that *Paroline v. United States*, 572 U.S. 434 (2014), and *United States v. Anthony*, 942 F.3d 955, 968 (10th Cir. 2019), preclude this Court from ordering him to pay joint and several restitution.  Respectfully, Mr. Cifuentes-Lopez misreads both cases.  In *Paroline*, the Supreme Court held that but-for causation was not possible in that case, where a child pornography possessor was one of thousands of possessors whom the child victim never personally interacted with, but that Section 2259 did not require strict but-for causation in that context.  However, the Supreme Court held that proximate causation was required by Section 2259(c) and the child pornography possessor should be ordered to pay restitution commensurate with his relative role in the harm to the victim for the disaggregated harms caused by his conduct, not the aggregate

harm from the trade in her images by "thousands of offenders."  The Supreme Court explicitly limited its holding to child pornography possession.

The Supreme Court made clear that its holding did not apply to cases involving hands-on offenses against children, where but-for causation is straightforward.  572 U.S. at 450 (explaining but-for causation is easily satisfied for producers of child pornography, parents who permit their children to be used in child pornography, individuals who traffic children, and the initial distributor of child pornography); *id.* at 454 (using the example of rape "by five men on five sequential nights" as an example of a case in which causation would be clear).  Further, the Supreme Court made clear in *Paroline* that its holding did not apply to "a set of wrongdoers acting in concert."  *Id.* at 454 (citing Prosser and Keeton § 52 at 346 (discussing full liability for a joint enterprise)).  In hands-on cases or cases involving wrongdoers acting in concert, the Supreme Court expressly did not require restitution to be limited to a defendant's relative role in the causal process.

Mr. Cifuentes-Lopez's citation to *United States v. Anthony* is unavailing because the facts are different here.  942 F.3d 955, 969 (10th Cir. 2019).  Specifically, the Tenth Circuit considered facts in which the victim had been trafficked by one defendant, rescued, and then subsequently trafficked by an entirely different group of individuals.  One of the later traffickers argued that the victim's earlier trafficking caused her harm, and that the later trafficking, at most, caused only minimal losses.  In *Anthony,* the victim's healthcare provider had combined the harm from the separate periods of trafficking and issued one calculation of aggregate loss from the unrelated traumas.  *Id.*  (explaining government had "made no attempt to isolate the harm" caused by the defendant; "the government disclaims

any need to isolate [defendant's] share of the harm vis-à-vis [an earlier abuser]").   In *Anthony*, there was no evidence presented to the district court of independent causation, i.e. that the later group of traffickers had caused harm distinct from the victim's preexisting harm.[1]

     *Anthony* is inapposite here because the United States is not seeking restitution from Mr. Cifuentes-Lopez to cover losses from a separate, unrelated trauma that occurred months or years before his own conduct—the calculation is based only on harm from Mr. Cifuentes-Lopez's conduct, in concert with Halbert and others.

     Moreover, the factual record here is more developed.  In *Anthony,* the Tenth Circuit expressly distinguished the evidence before it in *Anthony* from the expert opinion in *In re Sealed Case,* where Dr. Missar had opined that the defendant "had been the 'most significant cause' of the victims' harm and that they would have needed identical treatment even if they had had 'no previous trauma.'"  *Id.*  The Tenth Circuit emphasized that the healthcare provider in *Anthony* did not conclude that the victim "would have needed identical treatment even if [the earlier abuser] had not already harmed her"—the opinion Dr. Missar had offered in *In re Sealed Case*.  The factual record in *Anthony* was indeed bare: the healthcare provider's only description of the fact pattern was that the victim had "suffered harm as a result of the criminal activity in this case"—without identifying which case, which perpetrator, or what he had done to the victim.  *Id.* at 967.  *In re Sealed Case*

---

[1]    *Richman v. Sheahan*, 512 F.3d 876, 884 (7th Cir. 2008) (independent causation exists where "each [actor] might by his own act have inflicted the entire injury, in the sense that, had he not committed the act, the injury would have been no less grave than it was, as when two persons shoot a third and each wound would have been fatal by itself.")

was "inapposite" because it involved a factual record—and opinion by Dr. Missar—that connected the defendant's conduct to a calculation of loss, which was missing in *Anthony*.

A remand in *Anthony* was ordered to solve this factual problem, as the district court had not identified "what evidence of harm in *this case* supported the valuation" of "the necessary psychological care" for the victim, rather than some aggregate approximation of loss. *Id.* at 967. The Tenth Circuit noted, "Anthony's conduct toward R.W. was reprehensible, but the government still must prove how that conduct warrants compensation for a lifetime of psychological treatment." *Id.* at 969 n.10.

Contrary to Mr. Cifuentes-Lopez's characterization (Doc. 40 at 4), the Tenth Circuit did not hold that joint and several liability was inappropriate for child sex traffickers acting in concert.[2] Instead, the Tenth Circuit noted that Mr. Anthony's crimes were later in the context of a calculation of aggregate loss that included earlier, unrelated crimes and losses; on ***that record*** it was "not clear" what harm he caused. *Anthony,* therefore, did not extend the *Paroline* requirement of disaggregation to hands-on offenses or to "a set of wrongdoers acting in concert." 572 U.S. at 454. Because *Paroline* did not change the law with respect to wrongdoers acting in concert or hands-on offenses, and because *Anthony* involved aggregation of losses from unrelated crimes, neither invalidated the D.C. Circuit's reasoning in *In Re Sealed Case,* 702 F.3d 59 (D.C. Cir. 2012), or otherwise restricted joint and several liability.

---

[2]     The Tenth Circuit was not provided a factual record in which there was evidence that the defendant's conduct caused all of the victim's harms. Any conclusions regarding such a hypothetical record would be *dicta*.

Dr. Missar's report here is limited to calculating the losses caused by Mr. Cifuentes-Lopez and others acting in concert with him, at the same time as him, in the trailer he rented to Halbert, where the commercial sex business was primarily conducted.  Joint and several liability for the amount calculated by Dr. Missar is appropriate here and would not constitute holding Mr. Cifuentes-Lopez responsible for harms he did not cause.[3]

**Third**, Mr. Cifuentes-Lopez disagrees with Dr. Missar's inclusion of lost wages in restitution.  Dr. Missar finds a causal link between the trauma inflicted by Mr. Cifuentes-Lopez and the ability of either victim to complete their high school education, to maintain employment, or to achieve their possible financial earnings.  He explains in his reports that there is extensive research and writing on the financial earning capacity and financial management of victims of sexual abuse trauma.  (Doc. 39, Ex. 2 at 18, n. 1; Ex. 3 at 18, n.1.)

Attached as Exhibit 1 to this Reply is a source Dr. Missar cites that discusses the effect of sexual abuse trauma on financial earning and also the less obvious consequences for financial management behaviors (e.g., saving, spending, and wealth accumulation).  Ross, D.B. & Coambs, E. (2018), The Impact of Psychological Trauma on Finance: Narrative Financial Therapy Considerations in Exploring Complex Trauma and Impaired

---

[3]     Mr. Cifuentes-Lopez claims that he should not be held equally responsible for counseling, therapy, and treatment for the victims.  The United States disagrees with his characterization and minimization of his role in their harm.  Although he argues that he did not inflict the same trauma as Natalie Halbert, it is worth noting that Natalie Halbert never personally sexually assaulted either child.  At a minimum, Mr. Cifuentes-Lopez raped both children, who were too young to consent.  At worst, Mr. Cifuentes-Lopez sent scores of other men to the trailer to rape the children.

Financial Decision Making, Journal of Financial Therapy 9(2): 37-53.  Separate and apart from the obvious mental health symptoms that interfere with trauma victims' attention, focus, and ability to work to their potential—particularly when the trauma causes them to lose age- and developmentally-appropriate education and socialization—trauma victims experience difficulty with financial management based on complex connections between the trauma they experienced and money.  Trauma can cause financial management behaviors that are harmful, including money hoarding, excessive spending, money avoidance, difficulty setting boundaries with others, and shame associated with money when the victim's brain connects money to sex.

Dr. Missar explains that Mr. Cifuentes-Lopez's sexual abuse and exploitation of the victims impaired their ability to complete levels of education and to work to their potential, with symptoms of the trauma that interfere with sleep and deplete psychological resources. Dr. Missar will be available to testify by video teleconference from Washington, D.C., at the restitution hearing to further explain why the tutoring costs and estimated lost earnings provide a reasonable estimate of the victims' future lost income and relevant losses.

## CONCLUSION

But-for causation and proximate causation for joint and several liability are easily satisfied here under Tenth Circuit and Supreme Court precedent.  Dr. Missar's report provides a thorough evidentiary record that satisfies the preponderance standard required for this Court to award restitution to Jane Does 1 and 2 consistent with his calculations of loss attributable to Mr. Cifuentes-Lopez's conduct.

8

Respectfully submitted,

TIMOTHY J. DOWNING
UNITED STATES ATTORNEY

*s/ K. McKenzie Anderson*
K. McKenzie Anderson
Oklahoma Bar No. 30471
Assistant United States Attorney
210 West Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8781 - Telephone
(405) 553-8888 - Facsimile
mckenzie.anderson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Bob Jackson, Counsel for Defendant
LeAnne Burnett, Guardian Ad Litem
Alyssa Farrell, Guardian Ad Litem

*s/ K. McKenzie Anderson*
K. McKENZIE ANDERSON
Assistant United States Attorney

9